Erica J. Van Loon (Bar No. 227712)
evanloon@nixonpeabody.com
Andrew H. Winetroub (Bar No. 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (415) 984-8300

David L. May (admitted *pro hac vice*)
dmay@nixonpeabody.com
Jennette W. Psihoules (admitted *pro hac vice*)
jpsihoules@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

*Attorneys for Plaintiff Hästens Sängar AB*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HÄSTENS SÄNGAR AB,<br><br>                              Plaintiff,<br><br>        v.<br><br>THE GARRIGAN GROUP, D/B/A<br>COCO & DASH; and CHAIRISH, INC.,<br><br>                              Defendants. | Case No.:  3:22-cv-03623-VC<br><br>**AMENDED COMPLAINT FOR:**<br><br>**(1) FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT;**<br><br>**(2) FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER THE LANHAM ACT;**<br><br>**(3) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*.; AND**<br><br>**(4) TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW.** |

**DEMAND FOR JURY TRIAL**

1.     Plaintiff Hästens Sängar AB (hereinafter referred to as "**Hästens**" or "**Plaintiff**"), by and through its undersigned attorneys, brings this Amended Complaint against Defendant The Garrigan Group, LLC, d/b/a Coco & Dash (hereinafter referred to as "**Coco & Dash**") and Defendant Chairish, Inc. ("**Chairish**", and, together with Coco & Dash, the "**Defendants**") for trademark infringement, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., unfair competition under California Business and Professions Code Sections 17200 *et seq*., and trademark infringement and unfair competition under California common law.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over Hästens' claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because these claims arise under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).  In addition, supplemental jurisdiction over the related state law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

3.     This Court has personal jurisdiction over Defendants because, upon information and belief, Chairish is a citizen of this State with a principal place of business located in San Francisco, California; Defendants have regularly transacted, and continue to transact, business in this State, including but not limited to by Coco & Dash selling furniture and other home accessories to consumers through  its Internet storefront on the Chairish curated online marketplace, since at least as early as 2017; contract to supply goods and/or services in this State, including but not limited to through Coco & Dash's contract with Chairish to sell goods to consumers, which, by its terms, shall be governed by the laws of the State of California;  are causing tortious injury by an act in this State; and are causing tortious injury in this State by an act outside this State where they regularly do or solicit business, engage in other persistent courses of conduct and/or derive substantial revenue from goods used or consumed, or services rendered, in this State.

4.      Venue is proper in this judicial district and Court pursuant to 28 U.S.C. § 1391 because a substantial part of the acts complained of herein occurred in this judicial district, including but not limited to by offering for sale infringing product(s) through the Chairish platform based in San Francisco, California, and Defendants are subject to personal jurisdiction in this judicial district.

### DIVISIONAL ASSIGNMENT

5.      A substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco, including but not limited to the marketing and offering for sale of certain infringing products through the Chairish Internet platform based in San Francisco, California.  Accordingly, assignment to the San Francisco Division is proper pursuant to Civil L.R. 3-2(c)-(d) and Civil L.R. 3-5(b).

### THE PARTIES

6.      Hästens is a Swedish corporation and maintains its principal place of business at Box 130 Köping, Sweden 73123.

7.      Upon information and belief, Coco & Dash is a Texas limited liability company doing business as Coco & Dash with a principal place of business located at 2819 North Henderson Avenue, Dallas, Texas 75206.

8.      Upon information and belief, Chairish is a Delaware corporation with a principal place of business located at 465 California Street, Suite 1250, San Francisco, California 94104.

### FACTUAL BACKGROUND

### *Hästens' Rights*

9.      Hästens is engaged in the manufacture, sale, and distribution of, *inter alia,* luxury, handmade beds, mattresses, linens, quilts, pillows and textile products. Hästens' goods and services include those set forth within its various trademark applications and registrations, some of which are detailed below, and also include those related specifically to mattresses and textiles.

10.      Since 1978, Hästens has continuously used in U.S. commerce its distinctive check design and currently operates several stores in the United States, including multiple stores in the State of California, and worldwide, through which it markets and sells various high-end products,

AMENDED COMPLAINT

4895-6461-3935.5

including, *inter alia,* beds, mattresses, linens, quilts, pillows and other textile products under its check design. Depicted below is a small sample of Hästens' goods prominently featuring its distinctive check design:








11.     Hästens is the owner of all intellectual property rights in and to its distinctive check design, including without limitation the following federal trademark registrations (collectively the "**Hästens Registrations**," the registration certificates for which are attached hereto as **Exhibit A**):

a.   U.S. Registration No. 2,648,250, having a priority filing date of May 5, 2000,

for the mark  directed to the following goods: *Furniture, namely beds, bedsteads and bedroom furniture; mirrors, bedroom mirrors, picture frames; bedding, namely, mattresses, spring mattresses, pillows and down pillows* in Class 20 and *Textile products not included in other classes, namely bed covers and curtains of textile; bed linen, namely, sheets and pillow cases; down quilts, bed blankets* in Class 24 (hereinafter the "**Hästens '250 Registration**");

b.   U.S. Registration No. 3,813,053, having a priority filing date of June 22, 2009,

for the mark  directed to the following goods: *Furniture, including beds, bedsteads and bedroom furniture; mattresses, spring mattresses, pillows and down pillows* in Class 20 and *Woven textiles, namely, sheets, towels, bed blankets; textile products not included in other classes, namely, bed spreads; bed linen, bed clothes including blankets and pillow cases; down quilts* in Class 24 (hereinafter the "**Hästens '053 Registration**");

4895-6461-3935.5

c. U.S. Registration No. 5,877,018, having a priority filing date of June 28, 2016,



for the mark  directed to the following goods and services: *Furniture; Mattresses; Pillows; Beds* in Class 20, *Textile products, namely, bed linen, sheets, bed sets, pillow cases, duvet covers; bed covers; bedspreads; mattress covers; bed valances, bed skirts, canopies, bedroom curtains, plaids, towels, quilts, blankets and throws; down quilts* in Class 24, *Clothes, namely, pajamas; Footwear, namely, slippers, down socks* in Class 25, and *Marketing services; retail store services and providing consumer product information featuring beds, bed steads, bed frames, bedroom furniture, mattresses, spring mattresses, overlay mattresses, pillows, down pillows, bed linen, sheets, bed sets, pillow cases, duvet covers, bed covers, bedspreads, mattress covers, bed valances, bed skirts, canopies, bedroom curtains, plaids, towels, quilts, blankets, throws, down quilts, pajamas, nightgowns, bathrobes, slippers and down socks, nightcaps, sleep masks and soft toys* in Class 35;

d. U.S. Registration No. 5,947,305, having a priority filing date of June 28, 2016,



for the mark  directed to the following goods and services: *Furniture; Mattresses; Pillows; Beds* in Class 20, *Textile products, namely, bed linen, sheets, bed sets, pillow cases, duvet covers; bed covers; bedspreads; mattress covers; bed valances, bed skirts, canopies, bedroom curtains, plaids, towels, quilts, blankets and throws; down quilts* in Class 24, *Clothes, namely, pajamas; Footwear, namely, slippers, down socks* in Class 25, and *Marketing*

4895-6461-3935.5

*services; retail store services and providing consumer product information featuring beds, bed steads, bed frames, bedroom furniture, mattresses, spring mattresses, overlay mattresses, pillows, down pillows, bed linen, sheets, bed sets, pillow cases, duvet covers, bed covers, bedspreads, mattress covers, bed valances, bed skirts, canopies, bedroom curtains, plaids, towels, quilts, blankets, throws, down quilts, pajamas, nightgowns, bathrobes, slippers and down socks, nightcaps, sleep masks and soft toys* in Class 35;

e.   U.S. Registration No. 5,970,178, having a priority filing date of June 28, 2016,



for the mark                              directed to the following goods: *Furniture; Mattresses; Pillows; Beds* in Class 20, *Textile products, namely, bed linen, sheets, bed sets, pillow cases, duvet covers; bed covers; bedspreads; mattress covers; bed valances, bed skirts, plaids, towels, quilts, blankets and throws; down quilts* in Class 24, and *Clothes, namely, pajamas; Footwear, namely, slippers, down socks* in Class 25;

f.   U.S. Registration No. 5,970,179, having a priority filing date of June 28, 2016,



for the mark                              directed to the following goods: *Furniture; Mattresses; Pillows; Beds* in Class 20, *Textile products, namely, bed linen, sheets, bed sets, pillow cases, duvet covers; bed covers; bedspreads; mattress covers; bed valances, bed skirts, plaids, towels, quilts, blankets and*

*throws; down quilts* in Class 24, and *Clothes, namely, pajamas; Footwear, namely, slippers, down socks* in Class 25;

g.   U.S. Registration No. 5,950,959, having a priority filing date of June 28, 2016, for the mark  directed to the following goods: *Clothes, namely, nightgowns, bathrobes; Headgear, namely, night caps, sleep masks* in Class 25;

h.   U.S. Registration No. 6,064,837, having a priority filing date of June 28, 2016, for the mark  directed to the following goods: *Clothes, namely, nightgowns, bathrobes; Headgear, namely, night caps, sleep masks* in Class 25;

i.   U.S. Registration No. 6,072,194, having a priority filing date of June 28, 2016, for the mark  directed to the following goods: *Textile products, namely, canopies and bedroom curtains* in Class 24; and

j.   U.S. Registration No. 6,072,195, having a priority filing date of June 28, 2016, for the mark directed to the following goods: *Textile products, namely, canopies and bedroom curtains* in Class 24; and

k.   U.S. Registration No. 5,700,061, having a priority filing date of April 2, 2015, for the mark directed to the following goods: *beds; mattresses*

4895-6461-3935.5

*sold as a component of beds; spring mattresses sold as a component of beds* in Class 20.

12.     The Hästens '250 Registration for the mark  and the Hästens '053 Registration for the mark ![check mark] have become incontestable pursuant to 15 U.S.C. § 1065.  A copy of the USPTO's Notice of Acceptance and Acknowledgement of Declarations of Use and Incontestability filed under 35 U.S.C. §§ 1058 and 1065 for the Hästens '250 Registration and the Hästens '053 Registration are attached hereto and incorporated by reference as **Exhibit B**.

13.     Hästens has also established common law rights in and to its marks for use with goods and services related to its mattress and bedding manufacture and sales, including at least those goods and services set forth in the Hästens Registrations as set forth above. True and correct screenshots from Hästens' website showing use of the marks are attached hereto as **Exhibit C**.

14.     The foregoing marks covered under the identified Hästens Registrations, as well as Hästens' common law rights in and to the check design marks are hereinafter collectively referred to as the "**Hästens Design Marks**."

15.     Through Hästens' long and continuous use of the Hästens Design Marks, by it and its related companies and predecessors in interest, and by virtue of the Hästens Registrations of the marks in connection with its various goods and services as described above, Hästens has acquired valuable common law and statutory rights and goodwill in and to the Hästens Design Marks.

### *Defendants' Infringement*

16.     Coco & Dash is a textile, furniture and other home accessories retailer that has been in business since in or around 2014.

4895-6461-3935.5

17.     Coco & Dash sells its products throughout the United States through its website, https://cocoanddash.com/ (hereinafter, the "**Coco & Dash Website**"), as well as through its retail store located in Dallas, Texas (the "**Coco & Dash Showroom**").

18.     Coco & Dash also sells and offers for sale products through the Chairish curated online marketplace, including but not limited to furniture and other home accessories.

19.     Upon information and belief, Coco & Dash has sold goods through the Chairish curated online marketplace since at least 2017.

20.     Upon information and belief, Chairish is a curated online marketplace for home furnishings, including furniture, art, and home décor.

21.     Upon information and belief, goods are, *inter alia*, marketed, advertised, offered for sale, sold, scheduled for delivery, returned, and/or cancelled through Chairish's services.

22.     Chairish is not a passive platform but rather describes itself as a marketplace facilitator that works with sellers of goods to promote and complete sales of products through the Chairish curated marketplace.

23.     Defendants have been and, upon information and belief, are still currently manufacturing, producing, marketing, advertising, offering for sale and/or selling products, including but not limited to home furnishings such as sofas and pillows, featuring a check pattern identical and/or confusingly similar to one or more of the Hästens Design Marks (hereinafter, the "**Disputed Products**").   A representative example of a Disputed Product is shown below and attached hereto as **Exhibit D** and incorporated herein by reference.

4895-6461-3935.5

1
2
3
4
5
6
7
8



9      24.     Certain Disputed Products have been at least marketed and offered for sale through

10  the Chairish curated marketplace, including in connection with Coco & Dash.  A true and correct

11  copy of a Disputed Product offered for sale on the Chairish curated marketplace is shown below.

12
13
14
15
16
17
18
19
20
21
22
23



24      25.     Hästens has neither given permission nor licensed the right to Coco & Dash to use

25  the Hästens Design Marks in connection with the Disputed Products, and therefore, Coco & Dash's

26  unauthorized use of such marks constitutes infringement.

27
28

-11-
AMENDED COMPLAINT

26.     Similarly, Hästens has neither given permission nor licensed the right to Chairish to use the Hästens Design Marks in connection with the sale, offering for sale, distribution, or advertising of the Disputed Products, and therefore, Chairish's unauthorized use of such marks constitutes infringement.

27.     Upon information and belief, Chairish is involved in facilitating offers for sale, sales, distribution, and advertising of products on the Chairish curated marketplace, including but not limited to through providing the "Chairish Buyer Guarantee", offering "Chairish In-home Delivery" and "Chairish Local Delivery" for products, and directing the returns and order cancellation processes for products purchased on through Chairish's services.  Upon information and belief, each of these services were made applicable to the Disputed Products listed on Chairish's website.

28.     Hästens put Chairish on actual notice of its rights in and to the Hästens Design Marks through letters sent on or about September 22, 2021 and January 3, 2022, the latter of which directly addressed Coco & Dash's offering for sale one of the Disputed Products.  Despite having received such notice from Hästens, Chairish refused to enter into a written agreement to resolve the matter at that time.

29.     Chairish has offered for sale, sold, and/or advertised products that infringed Hästens' rights in the Hästens Design Marks above and beyond the Disputed Product listed on the Chairish marketplace for Coco & Dash.

30.     Upon information and belief, Chairish continues to offer for sale, sell, and/or advertise products that infringe Hästens' rights in the Hästens Design Marks.

31.     On November 19, 2021, counsel for Hästens sent a letter to Coco & Dash (the "**Hästens Letter**") putting Coco & Dash on notice of Hästens' rights in and to the Hästens Design Marks.  A copy of the Hästens Letter sent to Coco & Dash is attached hereto as **Exhibit E**.

32.     On December 2, 2021, counsel for Coco & Dash responded to the Hästens Letter denying Coco & Dash's infringement and expressly rejecting the demands Hästens set forth in the Hästens Letter.  Further, counsel for Coco & Dash affirmatively represented that Coco & Dash "will continue to market this merchandise as they see fit."

4895-6461-3935.5

33.     Subsequently, Hästens and Coco & Dash engaged in discussions regarding a potential informal resolution of the dispute.  In a good faith effort to advance such discussions, and to avoid unnecessarily burdening the federal courts, on December 10, 2021, Hästens provided Coco & Dash with a written proposal that set forth proposed terms for an amicable resolution of the dispute.  Hästens set December 20, 2021 as the expiration date for its offered terms.

34.     On December 22, 2021, counsel for Coco & Dash spoke by phone with counsel for Hästens.  Pursuant to a request made Coco & Dash's counsel during that call, Hästens agreed, as a courtesy in light of the holiday season, to extend the period in which Coco & Dash could accept Hästens' pending offer to resolve the matter to January 3, 2022.

35.     The good faith courtesy Hästens extended to Coco & Dash was met with bad faith duplicity by Coco & Dash.  Indeed, while Hästens was led to believe that Coco & Dash was evaluating Hästens' proposal and preparing a response thereto, Coco & Dash was in fact preparing a Complaint for filing in the Northern District of Texas naming Hästens as a defendant.

36.     When Hästens inquired about the status of Coco & Dash's response on January 3, 2022, counsel for Coco & Dash responded by attaching a copy of a Complaint asserting two declaratory judgment claims against Hästens in Coco & Dash's hometown of Dallas, Texas (the "**Texas Action**").

37.     Subsequently, Coco & Dash has publicly proclaimed its intention to continue selling products that infringe Hästens' exclusive rights in and to the Hästens Design Marks.

38.     Since filing the Texas Action, Coco & Dash has published statements, including but not limited to through social media accounts it controls, that are intentionally deceptive, misleading, and unfair with respect to Hästens and Hästens' efforts to enforce its rights in and to the Hästens Design Marks, including those covered by the Hästens Registrations.  Through such published statements Coco & Dash intends to disparage and tarnish Hästens' reputation and brand.

39.     Hästens was served with the Complaint filed in the Texas Action on or about May 30, 2022.

40.     Hästens has moved to dismiss the Texas Action as a result of the Court's lack of personal jurisdiction and Coco & Dash's failure to assert claims for which relief can be granted.

-13-

4895-6461-3935.5

1   While Hästens' motion to dismiss Coco & Dash's Amended Complaint remained pending, Coco &

2   Dash sought leave to file a second amended complaint in an alleged effort to plead sufficient facts

3   on the issue of personal jurisdiction.  Coco & Dash's motion for leave is pending as of the date of

4   this filing.

5          41.     By and through this Amended Complaint, Hästens seeks relief in this Court that is

6   unavailable to it in the Texas Action, including but not limited to remedies against Chairish and

7   pursuant to California's unfair competition law and the common law of this State.

8          42.     As of the date of this Amended Complaint, and notwithstanding having been put on

9   actual and constructive notice of Hästens' rights in and to the Hästens Design Marks, Coco & Dash

10  continues to market, advertise, offer for sale and/or sell the Disputed Products, at the very least, via

11  the Coco & Dash Website and the Coco & Dash Showroom.

12         43.     Upon information and belief, Chairish continues to supply its product (*e.g*., the

13  Chairish curated online marketplace) and the services thereon to Coco & Dash despite the fact that

14  it knows, or that it should know, that Coco & Dash purports to deny its infringement of Hästens'

15  trademark rights.

16         44.     Chairish's support for Coco & Dash, which includes submitting a declaration in

17  support of Coco & Dash in this Court on August 5, 2022, continues despite Hästens putting Chairish

18  on actual notice of Coco & Dash's trademark infringement.

19         45.     Upon information and belief, Defendants advertise and offer for sale, in the same or

20  similar channels of trade, the Disputed Products using marks that are identical and/or confusingly

21  similar to one or more of the Hästens Design Marks, on and for goods that are identical and/or

22  similar to and directly compete with those offered by Hästens.

23         46.     Upon information and belief, Hästens' dates of first use relative to one or more of

24  the Hästens Design Marks, in connection with at least the goods and services set forth within the

25  Hästens Registrations for the Hästens Design Marks, precede the earliest date Defendants can

26  possibly claim as their date of first use of the infringing marks incorporated on or in connection

27  with the Disputed Products.

28

4895-6461-3935.5

47.     In particular, the Hästens '250 Registration has a constructive date of first use of May 5, 2000 and the Hästens '053 Registration has a constructive date of first use of June 22, 2009, which both precede the earliest date Defendants can possibly claim as their date of first use of the infringing marks incorporated on or in connection with the Disputed Products.

48.     Since Coco & Dash was notified of Hästens' rights in and to the Hästens Design Marks in the Hästens Letter, Coco & Dash's ongoing and continued advertising, offering for sale, and/or sale of the Disputed Products constitutes knowing, intentional, and willful infringement.

49.     Upon information and belief, Defendants' manufacture, production, marketing, advertising, offering for sale and/or sale of the Disputed Products or otherwise, use of marks that infringe one or more of the Hästens Design Marks has caused, or is likely to cause, confusion, mistake and/or deception amongst actual and potential consumers as to the source of the goods and services within the meaning of § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), all to the severe detriment of Hästens.

50.     In view of the foregoing, Hästens has been damaged and will continue to be damaged by virtue of Defendants' infringement as set forth herein, including without limitation by Coco & Dash's ongoing and continued manufacture, production, marketing, advertising, offering for sale and/or sale of the Disputed Products and use of infringing marks and artwork.

**COUNT I**
**Trademark Infringement**
**(Plaintiff Against Defendants)**
**(15 U.S.C. §1114(1))**

51.     Hästens specifically hereby incorporates by reference the allegations asserted in each of the preceding paragraphs as if fully set forth herein.

52.     Without the authorization or consent of Hästens, Coco & Dash has used and continues to use trademarks and/or designations that are identical, confusingly similar to, and/or a reproduction, copy or colorable imitation of one or more of the Hästens Design Marks reflected in the Hästens Registrations.

53.     Without the authorization or consent of Hästens, Chairish has used trademarks and/or designations that are identical, confusingly similar to, and/or a reproduction, copy or

4895-6461-3935.5

colorable imitation of one or more of the Hästens Design Marks reflected in the Hästens Registrations.

54.     Furthermore, Defendants, by and through their manufacture, production, marketing, advertising, offering for sale and/or sale of the Disputed Products in U.S. commerce are and/or have been directly competing with Hästens' sales, distribution, and advertisement of the very same or similar goods and under and through the Hästens Design Marks covered under the Hästens Registrations.

55.     Coco & Dash's actions in manufacturing, producing, marketing, advertising, offering for sale and/or selling the Disputed Products continuously in commerce has occurred in the face of and notwithstanding having been on actual and constructive notice of Hästens' rights in the Hästens Design Marks reflected in the Hästens Registrations.

56.     Chairish's actions in marketing, advertising, offering for sale and/or selling the Disputed Products in commerce occurred in the face of and notwithstanding having been on actual and constructive notice of Hästens' rights in the Hästens Design Marks reflected in the Hästens Registrations.

57.     Defendants' unauthorized use of trademarks and/or designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the Hästens Design Marks reflected in the Hästens Registrations and in connection with competing goods, is likely to cause consumer confusion, mistake, and/or deception in the relevant market(s) as to the origin of the goods and services, and/or as to whether Defendants are sponsored by/affiliated with, or are otherwise connected to Hästens, in violation of Section 32(1) of the Lanham Act, as amended, 15 U.S.C. § 1114(1).

58.     By using trademarks and/or designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the Hästens Design Marks reflected in the Hästens Registrations, and by manufacturing, producing, marketing, advertising, offering for sale and/or selling the Disputed Products to the general public in connection with said marks and/or designations or confusingly similar variants thereof, for profit and without Hästens' authorization, Defendants are and/or have been depriving Hästens of its exclusive right to control, use and

otherwise benefit from its registered trademarks (along with other marks Hästens has applied for and/or uses at common law).  If permitted to continue, Defendants' actions will nullify Hästens' right to exclusive use of its registered trademarks, free from infringement, and will have a substantial and adverse effect on Hästens' existing and projected future interstate business of marketing goods identified by the Hästens Design Marks.

59.    As a result of Defendants' infringing conduct, Hästens has suffered substantial damages in an amount to be proven at trial, but well in excess of the jurisdictional minimum, as well as the continuing loss of the goodwill and reputation established by Hästens under its federally registered and other marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Hästens has no adequate remedy at law. Hästens will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

60.    By using, without Hästens' authorization, trademarks and designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the Hästens Design Marks reflected in the Hästens Registrations and by manufacturing, producing, marketing, advertising, offering for sale and/or selling the Disputed Products to the general public in connection with the infringing marks, Coco & Dash has intentionally and knowingly infringed Hästens' rights, thus making this an exceptional case under 15 U.S.C. § 1117(a).

**COUNT II**
**Unfair Competition and False Designation of Origin**
**(Plaintiff Against Defendants)**
**(15 U.S.C. §1125(a))**

61.    Hästens specifically hereby incorporates by reference each of the allegations asserted in the preceding paragraphs as if fully set forth herein.

62.    Defendants' unauthorized use of trademarks and/or designations that are identical and/or confusingly similar to one or more of the Hästens Design Marks in connection with the Disputed Products, which are identical and/or highly related goods, is likely to cause confusion, mistake, and/or deception among the general public as to the origin of the goods, or as to whether Defendants are sponsored by, affiliated with, originated from or are otherwise connected with Hästens, in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. §1125(a).

4895-6461-3935.5

63.     As a result of Defendants' infringing conduct, Hästens has suffered substantial commercial and other damages in an amount to be proven at trial, but well in excess of the jurisdictional minimum, as well as the continuing loss of the goodwill and reputation established by Hästens in its marks.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Hästens has no adequate remedy at law. Hästens will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

64.     By violating 15 U.S.C. §1125(a) through the use of trademarks and designations that are identical, confusingly similar to, a reproduction, copy or colorable imitation of one or more of the Hästens Design Marks in connection with the selling, offering for sale, distributing, and/or advertising goods and services to the general public under and through the infringing marks, Coco & Dash has intentionally and knowingly infringed Hästens' rights, thus making this an exceptional case under 15 U.S.C. § 1117(a).

**COUNT III**
**Unfair Competition**
**(Plaintiff Against Defendants)**
**(Cal. Bus. & Prof. Code Section 17200)**

65.     Hästens specifically hereby incorporates by reference the allegations asserted in the preceding paragraphs as if fully set forth herein.

66.     Defendants' acts described above, including without limitation their manufacture, production, marketing, advertising, offering for sale and/or sale of the Disputed Products, which directly compete with Hästens' sales, distribution, and advertisement of the very same or similar goods, and under one or more of the Hästens Design Marks and/or confusingly similar marks or designations thereto without authorization, constitute unfair competition in violation of California Business and Professions Code §§ 17200 *et seq*., as they are likely to deceive, and/or are or have been deceiving, the public.

67.     In addition, Coco & Dash's actions and representations on social media, including without limitation its public mischaracterizations of Hästens' assertions with respect to the Disputed Products and its intentional use, and promotion, of derogatory language to refer to Hästens, constitute further acts of unfair competition in violation of California Business and

4895-6461-3935.5

Professions Code §§ 17200 *et seq*., as such acts are, *inter alia*, unfair, deceptive, and misleading to the public.

68.     Defendants' acts of unfair competition have caused and will continue to cause Hästens irreparable harm.  Hästens has no adequate remedy at law for Defendants' unfair competition. Hästens is entitled to a judgment enjoining and restraining Defendants from engaging in further unfair competition, as well as restitutionary damages according to proof.

**COUNT IV**
**Common Law Trademark Infringement and Unfair Competition**
**(Plaintiff Against Defendants**)

69.     Hästens specifically hereby incorporates by reference the allegations asserted in the preceding paragraphs as if fully set forth herein.

70.     Defendants' unauthorized use of trademarks and/or designations that are identical and/or confusingly similar to one or more of the Hästens Design Marks in connection with the Disputed Products, which are identical and/or highly related goods to Hästens' goods, is likely to cause confusion, mistake, and/or deception among the general public as to the origin of the goods, or as to whether Defendants are sponsored by, affiliated with, originated from or are otherwise connected with Hästens, constitutes common law trademark infringement and unfair competition.

71.     Coco & Dash's infringement upon one or more of the Hästens Design Marks, as alleged herein, is and/or has been with the intent to deceive the public into believing that the Disputed Products are approved by, sponsored by, or affiliated with Hästens.  Coco & Dash's acts were committed with an intent to deceive and defraud the public.

72.     Hästens has been seriously and irreparably damaged by Coco & Dash's continued unauthorized use of one or more of the Hästens Design Marks and/or confusingly similar marks or designations thereto.

73.     Hästens possesses no adequate remedy at law to address the damage caused by Defendants' use of one or more of the Hästens Design Marks and/or confusingly similar marks or designations thereto, including without limitation Coco & Dash's continued use of the same.

4895-6461-3935.5

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hästens Sängar AB respectfully requests that this Court:

    i.    Enter an order preliminarily and permanently enjoining Defendants, and all persons acting in concert with them, or purporting to act on their behalf or in active concert or in participation therewith, from using Hästens' trademarks and any confusingly similar marks or designations, and from continuing their unfair methods of competition and unfair and deceptive acts and practices;

    ii.    Enter an order requiring Defendants to immediately discontinue their current infringing practices and discontinue the manufacture, production, marketing, advertising, offering for sale and/or sale of the Disputed Products;

    iii.    Enter judgment in favor of Hästens on each of the counts asserted herein and award Hästens all damages caused by the acts forming the basis of this Amended Complaint, including, without limitation, Defendants' profits and Hästens' actual damages, as well as Hästens' compensatory and restitutionary damages;

    iv.    Award treble damages to Hästens, as to the damages caused by Coco & Dash, pursuant to 15 U.S.C. §1117(b) due to Coco & Dash's willful, knowing, and intentional infringement of Hästens' trademarks;

    v.    Award all damages suffered by Hästens pursuant to California common law;

    vi.    Enter an order requiring Coco & Dash to pay Hästens the cost of this action and Hästens' reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a) and California common law;

    vii.    Enter an order requiring Defendants to destroy all Disputed Products pursuant to 15 U.S.C. § 1118; and

    viii.    Award Hästens such other and further relief as the Court deems just, proper and equitable.

**JURY DEMAND**

Plaintiff Hästens Sängar AB hereby demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

-20-

AMENDED COMPLAINT

4895-6461-3935.5

1

2  Dated: August 26, 2022                    Respectfully submitted,

3

4                                            **NIXON PEABODY LLP**

5                                            By */s/ Erica J. Van Loon*

6
                                             Erica J. Van Loon (Bar No. 227712)
7                                            evanloon@nixonpeabody.com
                                             Andrew H. Winetroub (Bar No. 291847)
8                                            awinetroub@nixonpeabody.com
                                             NIXON PEABODY LLP
9                                            One Embarcadero Center
                                             San Francisco, California 94111-3600
10                                           Tel: (415) 984-8200
                                             Fax: (415) 984-8300
11

12                                           David L. May (admitted *pro hac vice*)
                                             dmay@nixonpeabody.com
13                                           Jennette W. Psihoules (admitted *pro hac vice*)
                                             jpsihoules@nixonpeabody.com
14                                           NIXON PEABODY LLP
                                             799 9th Street NW
15                                           Washington, DC 20001-4501
                                             Tel: (202) 585-8000
16                                           Fax: (202) 585-8080

17
                                             *Attorneys for Plaintiff Hästens Sängar AB*
18

19

20

21

22

23

24

25

26

27

28

-21-

AMENDED COMPLAINT

4895-6461-3935.5